---

CASE 43.—PROSECUTION AGAINST HENRIETTA MORRIS AND ANOTHER FOR KNOWINGLY RENTING A HOUSE FOR THE UNLAWFUL SALE OF INTOXICATING LIQUORS.—September 24.

## Comomnwealth v. Morris, &c.

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From a judgment directing the jury to find the defendants not guilty the Commonwealth appeals.—Affirmed.

1. Intoxicating Liquors—Renting Premises for Unlawful Sale—Essentials of Offense.—To sustain a conviction under Ky. Stats. 1903, section 2557, for knowingly renting a house, etc., in which intoxicants are sold, etc., unlawfully, it must be shown that the owner or controller of the leased property knew or by ordinary prudence would have known, when or before the lease was made that the lessee intended to sell

intoxicants unlawfully in or upon the property; and the lessors of a storeroom to be used as a drugstore are not guilty where they did not have such knowledge, and did not consent to or approve unlawful sales, though they knew that such sales were made after the lease was given.

2. Landlord and Tenant—Use of Premises—Unlawful Sales of Intoxicants—Landlord's Rights.—That a tenant sells intoxicants on the premises unlawfully will not warrant the landlord in ejecting him, in the absence of authority to do so conferred by statute or the lease contract; and a landlord need not stipulate in the lease that a violation of law by the tenant will forfeit the lease.

JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, and D. A. McCANDLESS, Commonwealth's Attorney, for appellant.

As a general rule unless the statute expressly declares the contrary, the owner of premises upon which liquor is unlawfully kept for sale is not guilty of an offense if he leased the premises for a lawful purpose and did not affirmatively assent to such unlawful use, and he is not bound to interfere and invoke the law when he subsequently finds that the tenant is making such unlawful use of the premises. But this rule is reversed by the statutes of many states in the Union, and where there is any statute upon the subject, as in this case, it seems that the gist of the landlord's offense is in permitting the premises to be used for purposes violative of the liquor law, when he might have prevented it; and to convict one under these statutes, it is essential that he should have had such control over the property, as to be in a position to prevent or estop illegal acts of the tenant. (Black on Intoxicating Liquors, secs. 382, 342, 385.)

This same rule seems to be well established in this State as regards the owners of disorderly houses.

## AUTHORITIES CITED.

Kentucky Statutes, secs. 2557, 2571, 2572; Lock v. Commonwealth, 24 Ky. Law Rep., 654; Campbellsville v. Odervalt, 24 Ky. Law Rep., 1739; Ellison v. Commonwealth, 24 Ky. Law Rep., 657; Black on Intoxicating Liquors, secs. 382, 342 and 335; Kneffer v. Commonwealth, 94 Ky., 359; Smith v. Commonwealth, 6 B. M., 21; 8 Ky. Law Rep., 537; 10 Ky. Law Rep., 722; 11 Ky. Law Rep., 860; 15 Ky. Law Rep., 333; 79 Ky., 359.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellees were indicted for a violation of that part of section 2557 of the Kentucky Statutes of 1903 providing that: "Any person who knowingly furnishes or rents a house, room, wagon, or any conveyance or thing in which spirituous, vinous or malt liquors are sold, bartered or loaned, in violation of this act, shall upon conviction thereof be fined not less than sixty nor more than one hundred dollars; and the house, wagon, vehicle, land or other thing in which the liquors were sold, bartered or loaned shall be liable for all fines adjudged against the person selling, bartering or loaning the same." The charge in the body of the indictment was that they "unlawfully and knowingly furnished and rented to E. T. Willis a certain drug store on Washington street, in the town of Glasgow, in which spirituous liquors were sold during the month of November, 1907, and at said time and place and in said house said Willis sold spirituous liquors by retail to T. B. Gib, and said Mrs. Morris and Lewis Morris rented and furnished said house to said Willis during said month with the knowledge that he would so sell liquor in violation of law at said time and place." Upon the conclusion of the evidence for the Commonwealth, the court directed the jury to return a verdict of not guilty.

The evidence shows that in July, 1906, the appellees rented to E. T. Willis a storeroom to be used as a drug store for a term of two years, with the privilege on the part of Willis of renewing the lease for an additional term of two years. There is no evidence whatever that the lessors knew before or at the time the

lease was entered into that Willis intended to or would sell liquor on the leased premises in violation of the law, or that they in any manner consented to or approved the sale of it, although it appears that in 1907 he did sell and deliver liquor in violation of law to various persons on the leased premises, for which sales he was indicted and convicted in the Barren circuit court. And there is evidence conducing to show that appellees knew that illegal sales of liquor were made on the premises in 1907. The question to be determined is: Do these facts constitute a violation by appellees of the statute? We think not. To sustain a conviction under this statute, it is necessary that there should be some evidence, direct or circumstantial, conducing to show that the owner or controller of the leased property or premises knew, or had such information as would put a person of ordinary prudence upon notice, at or before the time the lease was entered into that it was the intention of the lessee to sell, in violation of law, liquor in or upon the property or premises leased. Where the owner or controller of the property or premises furnishes or rents it in good faith to be used for legal and legitimate purposes, he can not be subjected to a criminal prosecution under the statute because the lessee violates the law. Statutes in some respect similar to the one under consideration, and having the same purpose in view, have been enacted in a number of States. In some of them it is provided that the landlord or lessor becomes liable to a penal prosecution if he permits the tenant or lessee to continue in the use of the premises or property with knowledge that he is conducting in them business in violation of law. To afford the landlord the means of relieving himself from liability, these statutes also provide that he may at any time

during the term eject the tenant who has been guilty of violations of the statute; but our statute does not go this far. It does not make the landlord or owner liable because the tenant or lessee after obtaining possession of the property or premises violates the statute; nor does it give him the right for this cause to eject the tenant, and take possession of the premises or property during the term. In the absence of a statute, or a provision in the contract, authorizing the landlord to cancel the lease, or take possession of the rented property if the lessee or occupier violates the law, the mere fact that he does so will not warrant the landlord in ejecting him. Nor do we know of any authority that imposes upon the landlord the duty of stipulating in the contract that a violation of law by the tenant will work a forfeiture of the lease. In the absence of notice as herein indicated, the lessor who rents his property for legitimate purposes may assume that the tenant will not violate the law, but, if he does, the landlord can not be subjected to criminal liability for his misdoings under the present statute. 17 Am. & Eng. Ency. of Law, p. 315; 23 Cyc. pp. 203, 322; Crocker v. State, 49 Ark. 60, 4 S. W. 197; Cordes v. State, 37 Kan. 48, 14 Pac. 493; Hall v. Germain, 131 N. Y. 536, 30 N. E. 591.

Judgment affirmed.